IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 20-cr-265 |
| v. | ) | |
| | ) | Honorable Sara L. Ellis |
| ADAM WALTON | ) | |

**REPLY IN SUPPORT OF DEFENDANT ADAM WALTON'S
SENTENCING MEMO**

Defendant Adam Walton, by the Federal Defender Program and its attorney Amanda G. Penabad, respectfully submits this reply to the Government's Sentencing Memorandum.

The government opposes many of the defense's objections to the PSR, including the objection to the base offense level. *See* ECF No. 60 (hereinafter, Gov't Memo). In light of the substantial questions of statutory interpretation and case law involved in the analysis of this issue, the defense submits the following arguments in reply. The defense will respond to the other arguments raised in the government's brief orally at the sentencing on December 6, 2021.

**I.     The Government's "Natural Reading" Argument Fails.**

Mr. Walton has argued that his 2014 convictions for cannabis offenses cannot serve as predicates to enhance his base offense level because they are not "controlled substances" as defined by the guidelines, relying on *United States v. Ruth,* 966 F.3d 642, 654 (7th Cir. 2020). In response, the government first argues that the Seventh Circuit's opinion in *United States v. Wallace* forecloses Mr.

1

Walton's argument. Gov't Memo at 15 (citing *United States v. Wallace,* 991 F.3d 810 (7th Cir. 2021), *cert. denied*, No. 21-5413, 2021 WL 4733488 (U.S. Oct. 12, 2021)). In *Wallace*, the defendant argued the "phrase 'controlled substance' in U.S.S.G. § 4B1.2(b) refers only to substances in the federal Controlled Substances Act," the argument foreclosed by *Ruth*. *Id*. at 816. In the alternative, the defendant argued that it was "highly unlikely" positional isomers of cocaine were psychoactive and therefore failed the alternative definition offered in *Ruth*. *Id*. at 817. The defense made no argument that Illinois law permitted the possession and use of positional isomers of cocaine; indeed, the Illinois statute specifically defined cocaine to include positional isomers. *Id*. at 816. The Seventh Circuit rejected the defendant's argument because it had already held in *Ruth* that positional isomers were controlled substances, and because Illinois law expressly criminalizes positional isomers of cocaine, so whether the substance was behavior-altering was immaterial. *Id*. at 817.

      The defense's argument here is distinct. First, the Seventh Circuit has never decided whether hemp, a low-THC form of cannabis, is a controlled substance under the guidelines. Second, the defense argues that hemp is not behavior-altering *nor* is its possession or use criminalized by Illinois law. This is a crucial difference between *Wallace* and the instant case. Each of the additional cases cited by the government has the same flaw – the substance is criminalized under the state law. Like *Wallace*, *United States v. Gordon* involved a challenge based on an Illinois conviction for cocaine and the alleged overbreadth of positional isomers. No. 20-

3096, 2021 WL 3674652, at *1 (7th Cir. Apr. 16, 2021), *cert. denied sub nom. Wallace v. United States*, No. 21-5413, 2021 WL 4733488 (U.S. Oct. 12, 2021). Both *United States v. Sisk* and *United States v. Carter* involved an argument about positional isomers of cocaine under Indiana law, which criminalized "any… isomer." *United States v. Sisk,* No. 20-2493, 2021 WL 4314062, at *1 (7th Cir. June 23, 2021); *United States v. Carter*, No. 20-2520, 2021 WL 3674654, at *1 (7th Cir. May 6, 2021), *cert. denied sub nom. Wallace v. United States*, No. 21-5413, 2021 WL 4733488 (U.S. Oct. 12, 2021).

In an effort to show that Mr. Walton cannot meet the Seventh Circuit's definition of "controlled substance" under the guidelines, the government advances a number of other potential "natural readings" of the phrase "controlled substance." It then argues that cannabis falls within all of those definitions. Gov't Memo at 16. The first problem with the government's argument is that the substance to be compared to the "natural reading" of "controlled substance" is hemp (a low THC form of cannabis) and not cannabis generally. *See, e.g., Wallace,* 991 F.3d at 817 (comparing the overbroad element of "positional isomers" with the controlled substance definition).

The second problem with the government's argument is that when one compares hemp to the alternative definitions offered by the government, one finds that it does not fall within those definitions. The common thread in the "controlled substance" definitions are some sort of legal prohibition on use. But the Illinois Cannabis Control Act states that cannabis derivatives that are de-scheduled by the

3

federal government are to be treated the same way by the state, and the federal government has de-scheduled hemp in 2018. *See* 720 ILCS 550/15.1. Additionally, the Cannabis Control Act specifically exempts conduct governed by the Cannabis Regulation and Taxation Act (CRTA), 410 ILCS 705 et seq, and the Industrial Hemp Act, 505 ILCS 89/1 et seq,. Only the manufacture of hemp is regulated by the state. *See* 505 ILCS 89/1 et seq. Applying the government's proffered definitions, hemp is not "a drug or chemical that the law does not allow you to make, own or use" – the Farm Bill, Pub. L. 115-334, 132 Stat. 4490, and Industrial Hemp Act allow just that. Hemp is not "a drug that requires permission from a doctor to use" or "a substance (as a drug) whose use and possession is regulated by law (as title 21, chapter 13 of the U.S. Code)" – the Farm Bill de-scheduled hemp, and no prescription is necessary to use hemp. Hemp is not "a drug or chemical whose possession and use are prohibited by or regulated under the federal Controlled Substances Act or an analogous state law." The 2018 Farm Bill makes it clear that possession and use of hemp is not prohibited under the federal Controlled Substances Act. *See* Farm Bill, Pub. L. 115-334, 132 Stat. 4490. Nor is the possession or use of industrial hemp regulated by Illinois law. *See* Illinois Industrial Hemp Act, 505 ILCS 89/1 et seq.; 720 ILCS 550/15.1. In each of these "natural readings" hemp falls outside of the definition of a controlled substance. Even if one uses the *Ruth* definition as merely a guide, and substitutes any other proffered "natural reading" by the government, hemp is not a controlled substance.

4

## II. The Court Should Determine Whether Hemp is a Controlled Substance Presently, Not at the Time of the Predicate Conviction.

The government also argues that, under *Wallace*, the Court should focus on whether the drug is "expressly controlled" by state law to determine whether the substance is a "controlled substance," and argues that hemp was controlled in 2014. Gov't Memo at 16. This argument also suffers from a fatal defect: the government is assessing hemp as it was treated in 2014, instead of the date of sentencing. In each circuit where the government has advanced this theory – that the definition of a controlled substance should be assessed at the time of the previous state conviction instead of on the date of sentencing – the appellate courts have rejected it. *See United States v. Abdulaziz*, 998 F.3d 519, 525 (1st Cir. 2021); *United States v. Bautista*, 989 F.3d 698, 703 (9th Cir. 2021); *United States v. Williams*, 850 F. App'x 393, 398 (6th Cir. 2021). These opinions are well-reasoned, and this Court should likewise reject the government's theory.

Each of the appellate courts all made the same point: that the court typically uses the guidelines in effect at the time of sentencing, *see* 18 U.S.C. §3553(a)(4)(A)(ii), and it is nonsensical to rely on superseded law to determine a definition on the date of sentencing. *Abdulaziz*, 998 F.3d at 527 ("[T]here is nothing similarly strange about looking to federal law as it exists at the time of a defendant's federal sentencing to determine the criteria that a potentially applicable federal sentencing enhancement uses to determine whether the enhancement must be applied at that sentencing. Indeed, ordinarily, that is precisely where we would look to identify those criteria."); *Bautista*, 989 F.3d at 703

5

("*McNeill [v. United States,* 563 U.S. 816, (2011)] nowhere implies that the court must ignore current federal law and turn to a superseded version of the United States Code" to expound "federal sentencing law [as it] exists at the time of sentencing."); *Williams*, 850 F. App'x at 398 ("A basic Guidelines premise provides the answer: the district court must use the version of the Guidelines that was 'in effect on the date the defendant [was] sentenced,' including any unincorporated or incorporated amendments. This obligation applies when determining if a prior conviction counts as a 'controlled substance offense' for purposes of the Guidelines at issue and includes the controlled substance schedules (federal and/or state) to which the Guidelines necessarily refer. Interpreting the Guidelines to incorporate outdated controlled substance schedules, after Congress and the Tennessee legislature chose to alter them, would contravene this foundational rule.") (internal quotations and citations omitted). When the state and federal government have acknowledged non-psychoactive nature of a substance and permitted its manufacture and sale, there is no purpose served by using an outdated law to define what is a "controlled substance."

### III. The Fact that the Cannabis Control Act Does Not Specifically Mention "Hemp" is Immaterial.

The government also argues that the word "hemp" is not included in the definition of cannabis, apparently in an effort to argue that hemp was not controlled by the state in 2014. Gov't Memo at 17.[1] This argument has no merit.

---

[1] If the government's argument is that that hemp is not explicitly mentioned in the governing statutes presently, that is incorrect. *See* 410 ILCS 705/1-10.

Illinois law defined cannabis as "substances which are identified as including any parts of the plant Cannabis Sativa, whether growing or not" with certain narrow exceptions, e.g. "mature stalks." 720 Ill. Comp. Stat. Ann. 550/3. Those exceptions do not include a carve-out for THC concentration. No cross-reference in the Cannabis Control Act excluded cannabis sativa with a .3% THC concentration from Illinois's controlled substances. The definition of hemp, under present Illinois law, closely mirrors the cannabis definition, with the carve-out for THC concentration: "the plant Cannabis sativa L. and any part of that plant, whether growing or not, *with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis* that has been cultivated under a license issued under this Act or is otherwise lawfully present in this State, and includes any intermediate or finished product made or derived from industrial hemp." (emphasis added).[2] As noted in defendant's sentencing memo, cannabis and hemp are the same species of plant. *See* ECF No. 58 ("Defendant's Memo") (citing Michael D. Moberly, *Old Macdonald Hid a Farm: Examining Arizona's Prospects for Legalizing Industrial Hemp*, 20 DRAKE J. AGRIC. L. 361, 362-63 (2015)). Simply put, hemp is merely low-THC cannabis. *Id*. The argument that hemp was not subsumed in the Illinois cannabis definition in 2014 is without merit. Had it not been subsumed, there would be no reason for the federal government and the CRTA to amend the

---

[2] The federal definition of hemp is "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1).

7

definition of cannabis to specifically carve out hemp. *See* 21 U.S.C. §802(16); 410 ILCS 705/1-10.

The government's citation to *People v. Atchley*, 422 N.E.2d 266, 271 (Ill. App. 1981) is not to the contrary. The Illinois Appellate Court merely noted that mature cannabis sativa stalks are "a source" of hemp fiber. As noted in "Defining Hemp: A Fact Sheet," cited in Defendant's Memo, hemp can take the form of stalks, seeds, and flowers. *See* Renée Johnson, Cong. Research Serv., R44742, 3 Defining Hemp: A Fact Sheet (March 22, 2019). It is simply not accurate to suggest that "mature stalks" of cannabis encompass the entire category of hemp.

### IV.     The Government's "Theoretical Possibility" Argument Fails.

The government's final argument is that it is unaware of any prosecutions for hemp under the Cannabis Control Act. Gov't Memo at 18. The government quotes *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007), for the proposition that to "find that a state statute creates a crime outside the generic definition ... requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id*. (quoting *Gonzalez*, 549 U.S. at 193, 127 S.Ct. 815)). This argument fails for two reasons.

First, a defendant need not satisfy the realistic probability test when plain text of the state law reaches broader than the plain text of the federal definition. In *Ruth*, the government also argued that there was no basis to conclude that positional isomers of cocaine actually existed in the drug trade, and therefore

8

the state statute did not apply more broadly than the federal definition. *Ruth*, 966 F.3d at 648. The Seventh Circuit rejected this argument, finding that where the "plain language of the state statute categorically covers a larger swath of conduct than its federal counterpart," the court need not delve into whether there are actual cases of overbroad application. *Id.*[3]

Second, as noted in defendant's sentencing memo, any substance defined per the Illinois law as being produced from the Cannabis Sativa plant was classified as marijuana under the 2014 Illinois law, with limited exceptions. (Defendant's Memo at Section IA). For that reason, any substance testing positive for THC was, by definition, cannabis. Put simply, if a green leafy substance tests positive as

---

[3] *See also Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) ("Simply put, the plain terms of the Rhode Island drug schedules make clear that the Rhode Island offense covers at least one drug not on the federal schedules. That offense is simply too broad to qualify as a predicate offense under the categorical approach, whether or not there is a realistic probability that the state actually will prosecute offenses involving that particular drug."); *Vassell v. U.S. Attorney Gen.*, 839 F.3d 1352, 1362 (11th Cir. 2016) ("*Duenas-Alvarez* does not require this showing when the statutory language itself, rather than 'the application of legal imagination' to that language, creates the 'realistic probability' that a state would apply the statute to conduct beyond the generic definition."); *Salmoran v. Attorney Gen.*, 909 F.3d 73, 81-82 (3d Cir. 2018) (defendant not required to identify cases of actual prosecution when the state statute "expressly authorizes the state government to enforce broader conduct" because in such situations, "no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime."); *Singh v. Attorney Gen.*, 839 F.3d 273, 286 (3d Cir. 2016) ("The BIA erred in conducting a 'realistic probability' inquiry" because "[h]ere, the elements of the crime of conviction are not the same as the elements of the generic federal offense" and "[t]he Supreme Court has never conducted a 'realistic probability' inquiry in such a case"); *United States v. Grisel,* 488 F.3d 844, 850 (9th Cir. 2007) (en banc) ("Where ... a state statute explicitly defines a crime more broadly than the generic definition, no "legal imagination" is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime."); *Mendieta-Robles v. Gonzales*, 226 Fed.Appx. 564, 572 (6th Cir. 2007) (the Government's legal-imagination argument fails because "it requires us to ignore the clear language" of the statute)*; United States v. Castillo-Rivera,* 853 F.3d 218 (5th Cir. 2017) (en banc), (majority and dissenting opinions set forth the debate on that issue); *United States v. Thayer*, No. 20-CR-88-JDP, 2021 WL 4810566, at *5 (W.D. Wis. June 29, 2021) ("The government adduced evidence that the DEA had never encountered a case involving positional isomers of cocaine, but that did not matter under the conduct-based categorical approach.").

Case: 1:20-cr-00265 Document #: 63 Filed: 12/02/21 Page 10 of 13 PageID #:358

"cannabis" based upon THC presence, its possession or distribution would have been prosecuted as that of cannabis. The elements of cannabis possession pursuant to Illinois law did not require proof that THC level was above any threshold, as would the amended federal and state law. As such, it would have been impossible to discern whether, or how often, individuals have been prosecuted under Illinois law for possession of cannabis products that would fall under the .3% threshold if tested for THC concentration.

An example of how this definition is bluntly applied under Illinois law may be found in this very case. Exhibit A of defendant's sentencing memorandum was a stipulation agreed to by the parties in one of Mr. Walton's marijuana convictions. The stipulation indicates only that the substance tested was positive for cannabis. That stipulation does not attempt to identify or discern the level of THC present in the "plant material." Similarly, Exhibit A to this filing is an example of an Illinois State laboratory report for another one of defense counsel's cases where possession of marijuana was at issue. *See* Exhibit A. That exhibit likewise notes only that the "plant material" was tested and found positive for "cannabis." Again, no attempt was made to discern the level of cannabis present. Were it "hemp" by virtue of it containing less than .3% THC, state authorities would not have been aware of, nor concerned with, that fact; this distinction was irrelevant for Illinois prosecution. For this reason, the Government's argument that state authorities were unlikely to prosecute "hemp" possession must fail, because the 2014 Illinois law neither required, nor recognized, a distinction between that and "marijuana." *See also*

10

*United States v. Miller*, No. 1:18-CR-6, 2020 WL 4812711 (M.D. Pa. Aug. 19, 2020) (rejecting the government's "theoretical possibility" argument on this basis).

## CONCLUSION

For all of the above reasons, the government's argument that Mr. Walton's previous convictions qualify as predicates to enhance his base offense level fails. As a result, the defense submits that the appropriate base offense level is 14.

        Respectfully submitted,

        FEDERAL DEFENDER PROGRAM
        John F. Murphy,
        Executive Director

By:   *s/ Amanda G. Penabad*
        Amanda G. Penabad
        *Attorney for Adam Walton*

Federal Defender Program
55 East Monroe Street, Suite 2800
Chicago, Illinois 60603
(312) 621-8300

# EXHIBIT A

ILLINOIS STATE POLICE
Division of Forensic Services
Forensic Science Center at Chicago
1941 West Roosevelt Road
Chicago, Illinois 60608-1229
(312) 433-8000 (Voice) * 1-(800) 255-3323 (TDD)

**Bruce Rauner**
*Governor*

April 4, 2018

**Leo P. Schmitz**
*Director*

**LABORATORY REPORT**

MARCO VILLARREAL 12846
CHICAGO PD UNIT 311 GANG ENFC CNTRL
3340 W FILLMORE
CHICAGO, IL 60624

Laboratory Case ▮▮▮▮▮

OFFENSE   Violation of Cannabis Control Act
SUSPECT   ▮▮▮▮▮

The following evidence was received by the Forensic Science Center at Chicago on March 20, 2018:
**Inventory#** ▮▮▮▮▮

| LAB/AGENCY | ITEM SUBMITTED | FINDINGS |
|---|---|---|
| 1A | 10.6 grams of plant material from seven (7) packages | Cannabis |
| 1B | An estimated 6.1 grams of plant material from seven (7) packages | Not analyzed |

730 ILCS 5/5-9-1.4(b) states that a criminal laboratory analysis fee of $100 shall be imposed for persons adjudged guilty of an offense in violation of the Cannabis Control Act, the Illinois Controlled Substances Act, or the Methamphetamine Control and Community Protection Act.

Any analysis conducted is accredited under the laboratory's ISO/IEC 17025 accreditation issued by ANSI-ASQ National Accreditation Board (ANAB). Refer to certificate #AT-1697 and associated Scope of Accreditation.

Respectfully submitted,

Fella Johnson
Forensic Scientist III

cc: MARCO VILLARREAL 12846-CHICAGO PD GANG SECTION AREA 1